IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| INMOTION IMAGERY TECHNOLOGIES, LLC., | § § § § |
| Plaintiff, | § § CASE NO. 2:12-cv-298-JRG |
| v. | § § § |
| IMATION CORP., | § § |
| Defendant. | § § |

# MEMORANDUM OPINION AND ORDER

**I.    INTRODUCTION**

Pending before the Court is Defendant Imation Corp.'s Renewed Motion to Transfer Venue or, Alternatively, to Dismiss the Amended Complaint. (Dkt. No. 16.) Imation contends that the District of Minnesota is a more convenient forum than the Eastern District of Texas and seeks to transfer venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404(a). The Court, having considered the renewed venue motion and related briefing, **DENIES** the Defendant's motion to transfer venue because the balance of the private and public factors demonstrates that the transferee venue is not clearly more convenient than the venue chosen by InMotion. *See In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F. 3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

## II. FACTUAL AND PROCEDURAL BACKGROUND

InMotion brought this patent infringement lawsuit against Imation for infringement of U.S. Patent Nos. 6,526,219 and 8,150,239. InMotion is a Texas Limited Liability Company with its principal place of business in Marshall, Texas. Marshall is within the Eastern District of Texas. InMotion's office is managed by its Managing Director, John Raney, a full-time Texas resident. InMotion contends its Marshall office contains most if not all of its business and corporate documents, and the current documents regarding the Patents-in-Suit.

In moving to transfer, Imation states that it is a Minnesota-based company and management of the accused products is conducted at its headquarters in Oakdale, Minnesota. Imation contends it has no offices or manufacturing facilities in Texas. In support of transfer, Imation has identified seven employees who have knowledge or information about the products at issue, all of whom are Minnesota residents. Additionally, Imation contends its relevant documents are physically located at its facilities in Minnesota.

## III. LEGAL STANDARDS

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The initial question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d

201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several private and public interest factors, none of which are given dispositive weight. *Id.* The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

IV. ANALYSIS

A. Proper Venue

The Plaintiff does not dispute that this case could have been brought in the District of Minnesota, so the initial threshold in this case has been met and analysis of the public and private interests cited above must next be considered and weighed.

C. Private Interest Factors

i. *Relative Ease of Access to Sources of Proof*

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor. *See*

*Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is important to venue transfer analyses in patent infringement cases. *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

In this case, InMotion Imagery Technologies, LLC is a Texas Limited Liability Company with its principal place of business in Marshall, Texas. Marshall is within the boundaries of EDTX. However, Imation contests that InMotion's presence should be entitled to little weight because InMotion is a non-practicing entity with its headquarters in Texas. Imation argues that InMotion is unlikely to produce witnesses, evidence, or documents of substance in this case. Imation essentially asks this Court to conclude that InMotion was organized and structured in this District specifically to avail itself of the judicial system within EDTX and that its presence here is "recent, ephemeral, and an artifact of litigation." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010). In response, InMotion states that: (1) it maintains an office in the downtown business area in Marshall; (2) its office is managed by its Managing Director, Mr. John Raney, a full-time Texas resident; and (3) its Marshall office contains most if not all of its business and corporate documents and the current documents regarding the Patents-in-Suit.

Within this context, the Court must consider whether InMotion is an ephemeral entity created intentionally to manipulate venue. The Federal Circuit has found that an entity is ephemeral if it does not have (1) employees in the transferor forum; (2) principals that reside in the transferor forum; or (3) research and development-type activities in the transferor forum. *Novelpoint Learning LLC v. Leapfrog Enterprises, Inc.*, No. 6:10-cv-229-JDL, 2010 WL

5068146, at *4 (E.D. Tex. Dec. 6, 2010) (citing *In re Zimmer*, 609 F.3d at 1381). And, "[t]his is certainly true where the formation of the entity could be characterized as recent." *Id.*[1]

Here, Defendant does not assert that InMotion was recently formed simply for litigation. Instead, Defendant questions the reliability of John Raney's declaration and notes that it was dated before this suit was filed. But, if anything can be read from the contents of the declaration beyond what is plainly stated, it is that Mr. Raney has unequivocally held himself out as InMotion's Managing Director since at least January 19, 2011. Accordingly, InMotion's formation cannot be characterized as recent or ephemeral. Though current case law provides some guidance, each case has unique facts that must be decided on a case-by-case basis. Imation has not met its burden to show that InMotion was incorporated in EDTX only to manipulate venue. *NovelPoint Learning LLC v. LeapFrog Enterprises*, 2010 WL 5068146 at *5 (E.D. Tex. 2010) (the party was not ephemeral when it incorporated four months before it filed suit but also had two principals that lived in Texas); *In re Zimmer*, 609 F.3d at 1381; *In re Microsoft*, 2010 WL 4630219 at *3-4.

Returning to the § 1404(a) analysis, the Court finds that InMotion has shown that significant sources of proof exist within EDTX at least as relates to the Plaintiff. Additionally, sources of proof relating to the Defendant also exist in EDTX since Imation admits it has sold some products in Texas. On the other hand, weighing in favor of transfer is Imation's headquarters in Oakdale, Minnesota, where management of the products at issue is conducted.

---

[1] Direct guidance from the Fifth Circuit and Federal Circuit on this issue is somewhat limited and neither has pronounced a bright-line rule. However, two recent Federal Circuit cases on point provide some guidance. The Court in *In re Zimmer* found venue manipulation when the plaintiff created an illusory office in the transferor district, and transferred over 75,000 pages of documents, in anticipation of litigation. *In re Zimmer*, 609 F.3d at 1381. The Court in *In re Microsoft* found the plaintiff to be an ephemeral entity when it was incorporated under the laws of the state in which the transferor district lies mere days before filing suit in that district. *In re Microsoft*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011). In situations similar to these, the Court has an obligation to closely scrutinize the ephemeral entity allegation to determine whether any venue manipulation exists. *In re Zimmer*, 609 F.3d at 1381 ("MedIdea argues that, unlike *Hoffmann-LaRoche*, its decision to claim its principal place of business in Texas does not require close scrutiny. We disagree.").

Imation has also identified seven employees with relevant information or knowledge who are each residents of Minnesota. Importantly, third-party sources of proof, such as the inventors of the asserted patents, are located outside of both Texas and Minnesota. On balance, the Court finds this factor weighs slightly against transfer.

### ii. Availability of Compulsory Process

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-party witnesses who work or reside more than 100 miles from the courthouse. *Id.* Here, neither Imation nor InMotion has specifically identified any non-party witnesses in this case who are located within the subpoena power of District of Minnesota. Certainly, neither District has absolute subpoena power because at least some non-party witnesses, such as the named inventors, are located in Michigan. Evaluating the facts presented, the defendant has not shown that Minnesota would be any better in this regard than Texas. Accordingly, the Court finds this factor to be neutral.

### iii. Cost of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. The Court in *Volkswagen I* explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

6

371 F.3d at 205. Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

Here, the only identified third-party witnesses are the named inventors on the asserted patents who are located outside of both Texas and Minnesota. Although Imation has identified employees residing in Minnesota with relevant information, InMotion has also identified at least one employee who is a resident of the Eastern District of Texas. On balance, the Defendant has not shown that Minnesota would be clearly more convenient than Texas. Accordingly, the Court also finds this factor to be neutral.

### iv. Other Practical Problems

Practical problems include those that are rationally based on judicial economy. *Eolas Tech., Inc. v. Adobe Sys., Inc.*, 2010 WL 3835762, at *6 (denying a request to sever defendants), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011); *see also Volkswagen II,* 566 F.3d 1349, 1351 (Fed. Cir. 2009) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice … [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Court leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.")).

This case is one of seven related cases consolidated for all pretrial proceedings in this Court. *See InMotion Imagery Technologies, LLC v. Roku, Inc.*, 2:12-cv-150-JRG. Of the seven cases, four are still active. Moreover, this Court has resolved six previously-filed suits dealing with this same technology. Given that there are at least four other *InMotion* cases pending in this Court as part of the consolidated action, traditional notions of judicial economy clearly weigh against transfer.

**D.     Public Interest Factors**

Defendant contends the only public interests supporting transfer is court congestion and the interest in having localized interests decided at home; the other public interest factors are neutral.

*i.     Administrative Difficulties Flowing From Court Congestion*

Imation contends the median time to trial favors the District of Minnesota (20.4 months) over EDTX (25.1 months). While the Court acknowledges this difference, it finds that the statistical difference of only 4.7 months as not sufficiently significant or indicative of a marked difference in levels of court congestion. Thus, this factor is neutral.

*ii.     Local interest in having localized interests decided at home*

The Court must also consider local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

Imation argues the District of Minnesota has a local interest in this dispute. However, Imation acknowledges that it has sold products in Texas. InMotion likewise argues that EDTX has a local interest in this suit because it has an office in EDTX and its Managing Director is a resident of EDTX. On balance, this factor is also neutral.

On weighing the evidence, two factors weigh against transfer while the other factors are neutral. Imation has not met its burden of showing that transfer is clearly more convenient. Accordingly, Defendant's motion to transfer is **DENIED**.

## IV. MOTION TO DISMISS

Defendant seeks, in the alternative, to dismiss Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted. Without pointing to any specific paragraphs or counts in Plaintiff's Amended Complaint, Imation broadly contends that InMotion's allegations of direct and indirect infringement fail to meet the standards established by *In re Bill of lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012)*, Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (*See* Dkt. No. 16 at 10.) Imation further complains that the First Amended Complaint is deficient because it does not indicate which claims are alleged to be contributorily infringed, or which Imation is alleged to have induced infringement. (*See* Dkt. No. 16 at 11.) Imation fails to provide any further reasoning in support of its motion.

The Court finds that Imation's motion to dismiss is without merit because it fails to adequately invoke Rule 12(b)(6). Absent any specific guidance from Imation on which element of which cause of action relating to which asserted patent it contends is insufficiently pled, the Court declines to summarily strike the entire ten page Amended Complaint, as Defendant appears to request. Additionally, to the extent that Imation may have sufficiently invoked Rule

12(b)(6), the Court finds that InMotion has sufficiently pled its infringement contentions because its First Amended Complaint complies with Federal Rule of Civil Procedure Form 18 by identifying specific accused products as well as the category of accused devices. *See In re Bill of Lading*, 681 F.3d at 1334 (holding that the adequacy of pleading direct infringement is to be measured by the specificity required by Form 18). Additionally, "Form 18 and the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establish that each element of an asserted claim is met. Indeed, a plaintiff need not even identify which claims it asserts are being infringed." *Id.* at 1335.

Imation also contests the specificity of InMotion's inducement claims. Liability under induced infringement "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances v. SEB S.A.* 131 S. Ct. 2060, 2068 (2011); *In re Bill of Lading*, 681 F.3d at 1339. To survive a motion to dismiss, a complaint "must contain facts plausibly showing that [the defendants] specifically intended their customers to infringe the [asserted] patent and knew that the customer's acts constituted infringement." *In re Bill of Lading*, 681 F.3d at 1339. However, this requirement does not mean that a plaintiff "must prove itself at the pleading stage." *Id.* Here, InMotion has alleged that the filing of this lawsuit provides notice of the asserted patents and provides a sufficient basis to allege the knowledge and intent necessary to sustain allegations of indirect infringement. (*See* Dkt. No. 9 ¶¶ 12, 22.) The Court finds that InMotion's inducement allegations permit an inference of Imation's inducing others to infringe InMotion's asserted patents.

Imation further contests the sufficiency of InMotion's claims of contributory infringement. "Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to

10

practicing the invention, has no substantial non-infringing uses, and is known by the party 'to be especially made or especially adapted for use in an infringement of such patent." *In re Bill of Lading*, 681 F.3d at 1337 (quoting 35 U.S.C. § 271(c)). Here, InMotion has alleged that the accused products capable of indexing videos with images that are displayed in windows wherein at least one window displays motion imagery, are especially made and/or adapted for uses that infringe the asserted patents, and are not staple articles or commodities of commerce suitable for substantial noninfringing use. (*See* Dkt. No. 9 ¶¶ 15, 25.) Absent a showing in the pleadings to the contrary that Imation's products *do* have substantial noninfringing uses, the Court finds InMotion's contributory allegations permit an inference of Imation's contributing to others infringement of InMotion's asserted patents. *See in re Bill of Lading*, 681 F.3d at 1337 (found dismissal of contributory infringement claims appropriate because the amended complaints make clear on their face that the accused products *do* have substantial noninfringing uses).

Accordingly, Defendant's motion to dismiss is **DENIED**.

## VI. CONCLUSION

Having considered the parties arguments, the Court finds it cannot be said that the District of Minnesota is clearly more convenient than this District. On weighing the evidence, two factors weigh against transfer while the other factors are neutral. Imation has not met its burden to show that Minnesota is clearly more convenient. For the reasons set forth above, the Defendant's renewed motion to transfer venue or, alternatively to dismiss the amended complaint is **DENIED** in all respects.

**So ORDERED and SIGNED this 25th day of March, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE